# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Al's Service Center, Inc., an Illinois ) | |
| corporation and Kevin Finnegan, individually ) | |
| and d/b/a Al's Service Center, Inc., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 03 C 4508 |
| ) | Wayne R. Andersen |
| BP Products North America, ) | District Judge |
| a Maryland corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM, OPINION & ORDER

This case is before the court on plaintiff's motion for temporary restraining order ("TRO") and preliminary injunction pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 2805 prohibiting the defendant from terminating its franchise relationship with the plaintiff. For the reasons set forth below, we grant plaintiff's motion for temporary restraining order and preliminary injunction.

## BACKGROUND

The following facts are taken from plaintiff's third amended complaint and emergency motion for TRO and preliminary injunction, as well as from testimony presented at the June 2, 2006 hearing. The plaintiff, Al's Service Center, Inc. and its principal shareholder and president, Kevin Finnegan, ("Al's") bring this case against the defendant, BP Products North America ("BP"). Al's, the franchisee, contends that BP, the franchisor, has unlawfully terminated and nonrenewed its franchise agreement.

The most recent lease agreement ("Lease") between Al's and BP began on August, 1 2002 and was scheduled to end on July 31, 2005. The Lease sets certain grounds that allow for termination of the franchise agreement for the facility located at 17 West 615 Butterfield Road, Oak Brook Terrace, Illinois, which is defined as the "Facility" in the Lease. Specifically, the Lease states that:

> Lessor has the right at any time to terminate or nonrenew this Agreement, all associated agreements and any applicable franchise relationship for any reason or ground permitted by the PMPA or applicable federal, state or local law. Without limiting the generality of the foregoing, Lessor has such right of termination or nonrenewal upon the occurrence of any of the following . . .
>
> (l) Condemnation or other taking, in whole or in part, of the Facility pursuant to the power of eminent domain or conveyance in lieu thereof. . . .

Lease, ¶ 19.

The Lease and the franchise relationship between Al's and BP is governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA"). The PMPA governs the circumstances when franchise agreements may be terminated or nonrenewed.

Al's is a full-service gasoline and automotive service center located at 17 West 615 Butterfield Road, which is at the corner of Butterfield Road and Midwest Road in the city of Oak Brook Terrace, Illinois. Kevin Finnegan has owned and operated the station for more than thirty years. On October 15, 2002, the Illinois Department of Transportation ("IDOT") informed BP that, as part of a widening and resurfacing project, it would need to acquire 0.030 acres in fee simple and 0.027 acres of temporary easement of BP's property. The letter stated that it was IDOT's intent to enter into a negotiated agreement, but if there was no agreement, it would initiate an eminent domain proceeding. On March 26, 2003, BP notified Al's that IDOT intended to initiate the process of condemnation of part of the service station premises and that BP would

terminate and nonrenew the franchise relationship effective ten (10) days prior to the date of condemnation. Al's offered to pay BP 10% more than any final offer BP received from IDOT so as to avoid the eminent domain proceeding.

According to Al's, the gas station property covers 60,897 square feet, and it has five full access driveways. Through eminent domain, IDOT is taking about 800 square feet less than 2% of the total area of the gas station. The road improvements will additionally require the elimination of one of the driveways and convert another one of the driveways to a limited access driveway. Al's argues, and this court agrees, that this minimal taking will have a negligible effect on both the operation and safety of the business.

## DISCUSSION

The PMPA was enacted because of "the disparity of bargaining power which exists between the franchisor and the franchisee" in the gasoline industry. S.Rep No. 95-731, 95th Cong., 2d Sess. 15 ("Senate Report") 1, 17. As the Seventh Circuit noted, Congress "enacted the PMPA in an effort to protect 'franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.'" *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir. 1982) (quoting Senate Report at 15). "Most important, 'the one thing the Act is clearly intended to prevent is the appropriation of hard-earned goodwill which occurs when a franchisor arbitrarily takes over a successful going concern.'" *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1119 (7th Cir. 1990) (quoting *Brach v. Amoco Oil Co.*, 677 F.2d 1213 at 1220). Thus, consistent with its general goals, the PMPA makes it difficult, but not impossible, for a franchisor to terminate or nonrenew a franchise by generally prohibiting these actions. *Thompson v. Amoco Oil Co.*, 903 F.2d 1118 at 1119-1120.

3

The PMPA creates the presumption that any termination or nonrenewal of a franchise is unlawful by allowing franchisors to terminate a franchise only for certain grounds and by requiring franchisors to give adequate notice of their intent to terminate the franchise. 15 U.S.C. § 2802; *see Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 672 (3d Cir. 1984). The PMPA creates a private right of action for franchisees whose franchise is terminated unlawfully, and it additionally provides a preliminary injunction remedy that is easier to obtain than is generally required. 15 U.S.C. § 2805. In all actions challenging the lawfulness of a termination or nonrenewal, the franchisee need only show that the franchise has been terminated or nonrenewed; the burden is on the franchisor to show that it complied with the statutory requirements of the PMPA. 15 U.S.C. § 2805(c).

## 1. Standard for Preliminary Injunction

The PMPA allows courts to grant a preliminary injunction for cases brought under the Act. The court may grant a preliminary injunction if:

(A) the franchisee shows--

(I) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805.

In this case, the first and third requirements for granting a preliminary injunction are not at issue. Al's has demonstrated that the franchise has been terminated and nonrenewed.

4

Additionally, on balance, the hardships imposed on Al's are far greater than the hardships imposed on BP. Issuance of a preliminary injunction will have almost no effect on BP. In that case, Al's and BP would continue their agreement and BP would continue to make money from Mr. Finnegan's operation of Al's. However, not issuing this preliminary injunction could eliminate Al's business.

Thus, only the second element for preliminary injunction is at issue here. Specifically, do "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation?" 15 U.S.C. § 2805. In light of the fact that this is a far more lenient standard for preliminary injunction than is typically available outside of the PMPA, this court grants the motion for preliminary injunction because it finds that there are questions which are fair grounds for litigation.

## II. Section 2802(c) Is Grounds for a Preliminary Injunction

This case rests primarily on one issue of statutory interpretation which itself has created a split among the Federal Circuit Courts. Section 2802 of the PMPA provides a general prohibition against termination and nonrenewal of a franchise except when the notification provisions of the Act are met, and termination of the franchise is based on a ground prescribed in the Act. 15 U.S.C. § 2802. The issue in this case is whether one of these grounds has been met.

The PMPA allows a franchise to be terminated or nonrenewed upon "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." 15 U.S.C. § 2802(b)(2)(c). Section 2802(c) of the PMPA then defines the phrase "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" by enumerating twelve separate events which are

5

included within this phrase. 15 U.S.C. § 2802(c). This case concerns only section 2802(c)(5) which defines one of the events as "condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain." 15 U.S.C. § 2802(c)(5). The phrase "marketing premises" is further defined in the statute as "premises which . . . are to be employed by the franchisee in connection with sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(8).

In light of the foregoing, two questions are presented to this court: (1) are the twelve events enumerated in section 2802(c) *per se* grounds for termination – in other words, if the event is one of the twelve listed, is the court still required to inquire into whether the termination is reasonable, or are all twelve listed events automatically reasonable grounds for termination; and (2) did the taking in this case involve the "marketing premises," i.e., did the taking affect premises which were employed "in connection with sale, consignment, or distribution of motor fuel." We will address each of these issues in turn.

A. Is the Court Allowed To Inquire into the Reasonableness of the Termination?

BP argues that the twelve events enumerated in section 2802(c) are *per se* grounds for termination of a franchise relationship, while Al's argues that this court must examine the reasonableness of terminations whether or not the basis for termination is an event enumerated in section 2802(c).

The Seventh Circuit has not yet addressed the issue of interpretation of this section of the PMPA. Some Circuits follow BP's interpretation, i.e., any of the events enumerated in section 2802(c) are *per se* grounds for termination of a franchise agreement. *See Russo v. Texaco, Inc.*, 808 F.2d 221, 225 (2d Cir. 1986) ("Once having ascertained that an event is encompassed by one of the twelve enumerated events [in § 2802(c)], a court need make no further inquiry as to the

6

reasonableness of the termination."); *Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22, 26 (1st Cir. 1987) ("If an even falls within the list [in § 2802(c)], termination is conclusively presumed to be reasonable as a matter of law."); *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1573 (11th Cir. 1987) (holding that courts may only examine the reasonableness upon which termination or nonrenewal of a franchise is granted when the event is not enumerated in § 2802(c)); *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 378 (4th Cir. 1992) ("Section 102(c) of the PMPA, 15 U.S.C. § 2802(c), provides twelve situations in which Congress has decided that termination of a franchise agreement is reasonable.").

Other Circuits follow Al's interpretation, i.e., a court must examine the reasonableness of a termination regardless of whether the basis for the termination is an event enumerated in section 2802(c). *See Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 673 (3d Cir. 1984) ("Although the legislative history is not unambiguous, in light of the Act's specific intent to benefit franchisees, we decline to construe § 2802(c) as a per se termination rule favoring franchisors."); *Patel v. Sun Co. Inc.*, 141 F.3d 447, 457 (6th Cir. 1998) ("There is no question that at least some of the §2802(c) relevant event exceptions mandate some form of judicial scrutiny"); *PDC Midwest Refining v. Armada Oil and Gas Co.*, 305 F.3d 498, 508 (6th Cir. 2002) ("Courts must carefully scrutinize the reasonableness of terminations whether or not the terminating even is specifically enumerated in § 2802(c)").

We believe that the inquiry into whether a termination is "reasonable" within section 2802(b)(2)(c) of the statute is not foreclosed by virtue of the fact that a terminating franchisor can point to one of the enumerated grounds for termination set forth in section 2802(c). As the court stated in *Marathon Petroleum Co. v. Pendleton*, 889 F.2d 1509, 1512 (6th Cir. 1989), "we must scrutinize the reasonableness of terminations even when an event enumerated in § 2802(c)

7

has occurred." The *Marathon Petroleum* court rejected the oil company's argument that the "court is not required to look beyond the *per se* grounds for termination set forth under the Act to determine whether termination was reasonable." *Id.* Moreover, the court in *Chevron U.S.A., Inc. v. Mebtahi*, 148 F. Supp.2d 1019, 1026 (C.D. Cal. 2000), held that "even upon the occurrence of an event enumerated in § 2802(c)(1)-(11), the Court must still inquire into the reasonableness of a termination of an agreement covered by the PMPA." Likewise, in *Patel v. Sun Company, Inc.*, 141 F.3d 447 (3d Cir. 1998), the court rejected a franchisor's argument that there was no statutory basis for inquiry into the objective reasonableness of nonrenewal of the franchise agreement.

For these reasons, we find that a court may inquire into the reasonableness of a franchise termination, regardless of whether the basis for the termination is an event enumerated in 15 U.S.C. § 2802(c).

B. <u>Was the Taking Part of the Marketing Premises and Was it Reasonable?</u>

Next, we must consider: (1) whether the taking was a part of "the marketing premises" and (2) whether the taking may – or may not – be reasonable. While the IDOT construction project requires closing one of the five driveways to the gas station, the closure of one entrance does not in a material way affect "the marketing premises." The corner of land being taken is tiny relative to the grounds on which the business actually operates, and it is inconsequential in terms of the gasoline and automotive service business operated by Al's. Thus, we conclude that the taking may not be "a part of the marketing premises."

In addition, it may not be "reasonable" within the meaning of section 2802(b)(2) of the PMPA to terminate and nonrenew Al's franchise on the basis of the condemnation of this corner of the property. This is one of the "rare cases [in which] the literal application of a statute will

8

produce a result demonstrably at odds with the intentions of its drafters.'" *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

We believe that such a strict interpretation is in direct conflict with the legislative history of the PMPA, which clearly shows that it was enacted to offer "franchisees meaningful protections from arbitrary or discriminatory terminations and non-renewals." Senate Report at 18. Thus, we conclude that the PMPA's legislative history does not support making minimal condemnations, such as the one in the instant case, grounds for termination.

For these reasons, a preliminary injunction is granted because there are sufficient questions going to the merits of whether the taking is of "a part of the marketing premises" and, if so, whether the taking is "reasonable."

## CONCLUSION

For the reasons addressed above, we grant the motion of Al's Service Center, Inc. and Kevin Finnegan for a temporary restraining order and preliminary injunction. BP Products North America is hereby prohibited from terminating or nonrenewing its franchise relationship with Al's Service Center. This case is set for status on July 20, 2006 at 9:00 a.m.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: June 9, 2006

9