UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AL'S SERVICE CENTER, INC., and KEVIN FINNEGAN, | ) ) ) |
| Plaintiffs, | ) ) ) 03 C 4508 |
| v. | ) ) Judge George M. Marovich |
| BP PRODUCTS NORTH AMERICA, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Al's Service Center, Inc. ("Al's") and Kevin Finnegan ("Finnegan") filed a one-count fifth-amended complaint against defendant BP Products North America ("BP"). Plaintiffs allege that defendant violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801-2806. The Court previously granted plaintiffs a temporary restraining order and preliminary injunction. Before the Court are the parties' cross motions for summary judgment and plaintiffs' motions to strike. For the reasons set forth below, the Court denies plaintiffs' motions to strike. The Court denies plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment.

**I.   Background**

      **a.   Motion to strike and evidentiary objections**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts

are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to both parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make *the Court's* job manageable, not to give litigants additional ammunition to use against one another.

Plaintiffs filed two motions to strike. Plaintiffs want to strike the declarations of Lisa Freeman ("Freeman") and various exhibits. This the Court will not do. The Court need not take the time to strike that which it can simply ignore. Plaintiffs' motions to strike are denied. The Court will, however, rule on the evidentiary objections contained within the motions to strike.

First, plaintiffs object to portions of Freeman's declarations on the grounds that they lack foundation. The Federal Rules of Evidence require foundation for testimony. Rule 602 of the Federal Rules of Evidence provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See* Fed. R. Evid. 602. Thus, in an affidavit, a statement that a witness knows something, without statements about *how* the witness knows that something, is not admissible. *See Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). For example, in Freeman's declaration, she states that "[t]hroughout the summer of 2005, Mr. Finnegan continued to operate his station." Nowhere in the declaration does

Freeman state how she knows this. The Court has ignored this and all other statements that lack foundation.

Next, plaintiffs object to the admissibility of a number of defendant's exhibits. Specifically, plaintiffs objects that C, D and J are inadmissible hearsay. Defendant failed to include an affidavit authenticating the documents and establishing how they come within an exception (such as the business record exception) to the hearsay rule. Accordingly, the Court sustains plaintiffs' objections as to the admissibility of those exhibits. *See Woods v. City of Chi*, 234 F.3d 979, 988 (7th Cir. 2001) ("Normally, . . . at the summary judgment stage, a party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial.").

### B. Facts relevant to the motion

The following facts are undisputed unless otherwise noted.

Plaintiff Kevin Finnegan ("Finnegan") once operated plaintiff Al's Service Center, Inc. ("Al's"), a gas and service station on Butterfield Road in Oak Brook Terrace, Illinois. Finnegan operated Al's for more than thirty years until May 1, 2008.

For most of those thirty years, plaintiffs leased the station and the land upon which the station is located from Amoco, which owned the land and the station. The lease agreements also allowed plaintiffs to sell gas under the Amoco name. By 1998, Amoco had merged with BP. The Dealer Lease and Supply Agreement plaintiffs signed on or about October 24, 2002 was with BP.

During the thirty or so years that plaintiffs were in business, Finnegan developed Al's into a full-service station. He added an automatic car wash, repaired vehicles, offered 24-hour towing and operated a retail convenience store.

In early 2001, BP considered buying Al's from Finnegan. By late February 2001, BP had developed a site plan that included a proposed new structure and parking lot. Plaintiffs say, and defendant disputes, that in the spring of 2002, BP offered to pay Finnegan $500,000 to buy out the lease on Al's, an offer which plaintiffs rejected. On October 24, 2002, the parties signed a new lease that was set to expire July 31, 2005.

On or about October 15, 2002, the Illinois Department of Transportation ("IDOT") sent a letter to BP. The letter advised BP that IDOT was planning to widen and resurface Illinois Highway 56 and that the project would require IDOT to acquire by eminent domain a portion of the property BP leased to plaintiffs. The letter said that if BP did not enter a negotiated agreement with BP, IDOT would initiate an eminent domain proceeding.

In February 2003, plaintiffs met with two BP employees, including Steve Crooks ("Crooks"). They discussed IDOT's condemnation plan, and the BP employees informed plaintiffs that BP was going to terminate their lease. Also in February 2003, Crooks spoke with a representative from IDOT and asked whether IDOT's project could be altered such that Al's could stay in business.

On or about March 26, 2003, BP sent a letter to Finnegan. Among other things, the letter stated:

> Please be advised that we have been informed by the Illinois Department of Transportation ("IDOT") that they intend to initiate the process of condemning and acquiring the service station premises pursuant to that entity's eminent domain powers and as part of this process, IDOT eventually intends to take title to the premises.
>
> Accordingly, please be advised that BP does hereby terminate and nonrenew any attendant franchise relationship, effective ten (10) days prior to the date of condemnation or date of sale in lieu of condemnation (the "Effective Date").

Years passed, and plaintiffs continued to operate Al's and sell BP fuel at the same Butterfield Road location. It was not until March 2005 that IDOT actually filed its

condemnation action, and it is undisputed that IDOT ultimately condemned a portion of the premises BP had leased to plaintiffs.

On or about August 18, 2005, BP sent Finnegan another letter. In the letter, BP informed Finnegan that the time for termination had arrived. BP demanded that Finnegan vacate the premises by September 7, 2005.

Before BP sent the letter, on July 1, 2005, plaintiffs had filed a motion for temporary restraining order and preliminary injunction. For reasons not made clear to this Court, the motion was not ruled upon. Plaintiffs withdrew the motion on March 16, 2006. In the meantime, Finnegan continued to operate Al's and to sell BP fuel.

Things heated up again later in March 2006. After IDOT notified BP that it was about to begin construction, BP sent Finnegan another letter. This letter informed Finnegan that it was time to terminate his lease and that BP wanted him to vacate the premises by March 20, 2006.

Plaintiffs went back to court. Plaintiffs again moved for a temporary restraining order and preliminary injunction.

For the next several months, Finnegan continued to operate Al's and continued selling BP fuel. BP, however, failed to deduct automatically plaintiffs' rent payment for the months of March, April, May, June and July 2006.

On or about May 18, 2006, BP temporarily stopped delivering gas to Al's. Plaintiffs went to court, and the District Court Judge assigned to the case ordered BP to "deliver gas, if it is safe to do so, until the Court decides the underlying franchise dispute." BP failed to deliver gas to Al's from May 26 to June 2, 2006.

On June 9, 2006, the District Judge assigned to the case granted plaintiffs' motion for temporary restraining order and preliminary injunction. The order stated, among other things,

"BP Products North America is hereby prohibited from terminating or nonrenewing its franchise relationship with Al's Service Center." BP appealed.

In the meantime, Finnegan continued to operate Al's. Another wrinkle popped up in late July 2006. On July 31, 2006, IDOT removed plaintiffs' identification sign and lighting. BP admits that it was responsible, under the lease, for replacing the sign. The parties agree that the sign was not replaced; they do not agree why. Finnegan continued to operate Al's.

In April 2007, BP dismissed its appeal. The parties agree that, by June 2007, BP notified Finnegan that it was rescinding its notice of termination. BP also offered plaintiffs a new lease of the same site, which Finnegan refused to sign. Finnegan continued to operate Al's, and BP continued to deliver gas.

On May 1, 2008, plaintiffs advised BP that they were losing too much money and could not stay in business. Plaintiffs vacated the premises.

The Court takes judicial notice of the fact that the average price for a gallon of gasoline in DuPage County, Illinois was $3.02 in December 2007, $3.20 in January 2008, $3.24 in March 2008, $3.46 in April 2008, $3.91 in May 2008 and $4.17 in June 2008.

The parties have moved for summary judgment on plaintiffs' claim.

## II. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

Plaintiffs brought suit under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2806, which "governs franchise arrangements for the sale, consignment, or distribution of motor fuel 'in commerce,' and protects franchisees from arbitrary or discriminatory termination or nonrenewal of their motor fuel franchises." *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 855 (7th Cir. 2002). The Seventh Circuit has summed up the law this way:

> Both the text and structure of the Act indicate that Congress enacted the PMPA to address the disparity in bargaining power then existing between franchisors (typically major oil companies) and franchisees in the petroleum industry, and 'to level the playing field on which these parties interact. The PMPA was designed to accomplish this purpose by providing a single, uniform set of rules governing the termination of petroleum franchises and nonrenewal of petroleum franchise relationships. *See generally* 15 U.S.C. §§ 2801-2806. The PMPA prohibits franchisors from terminating a franchise or discontinuing a franchise relationship, 15 U.S.C. § 2802(a), unless the franchisor does so pursuant to one of the grounds enumerated in the Act, 15 U.S.C. §§ 2802(b)(2)-(3) or 2803(c), and meets the notification requirements contained in 15 U.S.C. § 2804. Thus, the PMPA strikes a balance between the rights of franchisors and the rights of franchisees, by affording franchisees important but limited procedural rights, while at the same time providing franchisors with significant latitude to respond to changing market conditions.

*Dersch*, 314 F.3d at 855-856 (citations omitted).

Franchisees have a cause of action under the PMPA if the franchisor terminates or fails to renew the franchise. The franchisee has the "initial burden under the PMPA to establish that its

-7-

franchise has been terminated or not renewed, and if it fails to satisfy that burden, our inquiry is at an end." *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 905 (7th Cir. 1997) (internal citations omitted). If the franchisee meets its burden, the franchisor has the burden of establishing one of the affirmative defenses, i.e., that the termination or nonrenewal was privileged under the Act and that it met the Act's notice requirements.

Plaintiffs seem to think that meeting their burden is a slam-dunk: they devote only eleven lines of their initial brief to the argument (although they devote more space in subsequent briefs). Plaintiffs claim that they can meet their burden in one of two ways. First, plaintiffs assert that defendant terminated the franchise on March 26, 2003, when BP sent plaintiffs the letter stating that it was terminating the franchise. Second, plaintiffs argue that defendant failed to renew the franchise relationship when the lease expired on July 31, 2005.

The Court first considers plaintiffs' argument that defendant failed to renew the franchise relationship on July 31, 2005 and, as always, looks to the statute for guidance. The PMPA makes it unlawful to "fail to renew any franchise relationship" except as provided under the PMPA. 15 U.S.C. § 2802(a)(2). The PMPA also defines "fail to renew." Specifically, the PMPA provides, in relevant part:

> The terms 'fail to renew' and 'nonrenewal' mean, with respect to any franchise relationship, a failure to reinstate, continue, or extend the franchise relationship–(A) at the conclusion of the term, or on the expiration date, stated in the relevant franchise.

15 U.S.C. § 2801(14)(A). "Franchise relationship," in turn, "means the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise." 15 U.S.C. § 2801(2).

The Court concludes that BP did not fail to renew the franchise relationship on July 31, 2005. Plaintiffs are correct, undisputedly, that BP did not offer to sign a new lease agreement when the prior agreement expired on July 31, 2005. If "fail to renew" were defined as a failure to offer a new lease, plaintiffs would be on their way to victory; but, it is not. Rather, failure to renew is a failure to "reinstate, continue, or extend" the franchise relationship. Here, it is undisputed that even after July 31, 2005, BP continued to deliver fuel and that Finnegan continued to operate Al's on the leased premises. It is apparent that the parties continued–for years–to comply (despite the occasional missed delivery or missed rent payment) with their obligations and responsibilities even after the lease expired. The Court concludes, as a matter of law based on the undisputed evidence, that the parties continued the franchise relationship after the lease expired on July 31, 2005, and, accordingly, the Court concludes that defendant did not fail to renew the franchise relationship on July 31, 2005.

Plaintiffs also argue that BP terminated the franchise on March 26, 2003. The PMPA makes it unlawful for a franchisor to "terminate any franchise" except as provided under the Act. 15 U.S.C. § 2802(a)(1). As plaintiffs point out, it is undisputed that on or about March 26, 2003, BP informed plaintiffs by letter that BP was terminating the franchise effective ten days before IDOT condemned a portion of the leased property. It is also undisputed that IDOT eventually condemned a portion of the leased property. The March 26, 2003 letter undoubtedly triggered plaintiffs' right to go to court and pursue their rights under the PMPA. *See Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627, 629 n.3 (7th Cir. 2004). A franchisee can go to court when it receives a notice of termination; it need not wait until the termination is effective to seek injunctive relief. That does not mean, however, that the termination is effective when the notice is received. In

this case, the parties continued as they had before: BP continued to deliver fuel, and Finnegan continued to sell the fuel and operate Al's. It is undisputed that in June 2007, BP notified plaintiffs that it was rescinding the notice of termination. The Court understands that plaintiffs did not want the termination rescinded (which is a little ironic since they had gone to court to prevent the termination). Nothing in the PMPA, however, prevents a franchisor from rescinding a notice of termination. *See Seckler v. Star Enterprise*, 124 F.3d 1399, 1404 (11th Cir. 1997) ("While the PMPA was written to curtail some of the petroleum companies' business practices, it does not go so far as to prevent a petroleum company from rescinding a notice of non-renewal."); *Akky v. BP America*, 73 F.3d 974, 975 (9th Cir. 1996) (dismissing case where "[a]t the time plaintiffs filed this action, no notice of termination, as such, was in effect, the notices having been rescinded"); *Kothari v. Motiva Enterprises*, 2006 WL 2129097 at *5 (S.D. Tex. July 27, 2006) (concluding that plaintiff's PMPA claim was moot after defendant rescinded the notice of termination). Because plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude that BP effectuated a termination before it rescinded its notice of termination, the Court concludes that plaintiffs have failed to meet their burden of showing that BP terminated the franchise.

What plaintiffs may have had (but never claimed) was a breach of contract. The PMPA, though, "was not designed to provide franchisees with a federal forum for the resolution of run-of-the-mill contract disputes." *Dersch*, 314 F.3d at 862.

Plaintiffs have failed to establish that they are entitled to judgment as a matter of law. Their motion for summary judgment is denied.

Furthermore, the Court concludes that plaintiffs have failed to create an issue of fact with respect to elements for which they will bear the burden of proof at trial. Accordingly, defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment on plaintiffs' claim is granted.

## IV. Conclusion

For the reasons set forth above, the Court denies plaintiffs' motions to strike. The Court denies plaintiffs' motion for summary judgment. The Court grants defendant's motion for summary judgment.

This case is set for status June 16, 2009 at 11:00 a.m.

ENTER:

/s/ George M. Marovich
_____
George M. Marovich
United States District Judge

DATED: June 1, 2009